UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**AMBER H.,**

**Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-01115-TPK

OPINION AND ORDER

## OPINION AND ORDER

  Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on August 25, 2021, denied Plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 9), and the Commissioner has filed a similar motion (Doc. 11). For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Commissioner.

### I. BACKGROUND

  On July 10, 2019, Plaintiff filed her applications for benefits, alleging disability since January 1, 2019. Those applications were denied initially and on reconsideration. An Administrative Law Judge then held a hearing on December 8, 2020. Plaintiff and a vocational expert, Dawn Blythe, testified at that hearing.

  The ALJ issued an unfavorable decision on January 29, 2021. He found, first, that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2024, and that she had not engaged in substantial gainful activity since her alleged onset date. Next, the ALJ concluded that Plaintiff had severe impairments including depressive and bipolar related disorder, anxiety and obsessive-compulsive related disorder, and personality and impulse-control disorder. He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

  Moving to the next step of the sequential evaluation process, the ALJ determined that Plaintiff was able to perform a full range of work at all exertional levels. However, she had nonexertional limitations including being restricted to performing simple, routine, and repetitive tasks but not at a production rate pace, to making simple work-related decisions, to having only occasional interaction with supervisors, coworkers, and the general public, and having the ability

to tolerate a few changes in a routine work setting defined as occasional changes to the worksite and routine. After finding that Plaintiff could not perform her past relevant work, the ALJ, relying on testimony from the vocational expert, determined that Plaintiff could perform jobs such as housekeeping cleaner, page, and coffee maker. He also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises this issue:

> The Administrative Law Judge (ALJ) did not properly evaluate an opinion from Plaintiff's counselor. The ALJ did not properly consider the supportability factor for this opinion. The ALJ failed to articulate and explain these factors, and to the extent the ALJ did this it was conclusory. In addition, the evidence in the record supported and was consistent with the opinion. This left the decision and residual functional capacity (RFC) not supported by substantial evidence.

Plaintiff's memorandum, Doc. 9-1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

At the administrative hearing, Plaintiff, who was 30 years old at that time, testified, first, that she was currently residing in a halfway house. She had a bachelor's degree in communication and last worked as a cashier for three months in 2020. Her prior jobs included receptionist, customer service representative, negotiations specialist, and cleaner. She said that she could not work due to mental health issues.

Plaintiff further testified that she was taking several medications to treat her mental health conditions. She was also seeing a counselor twice a week and a psychiatrist once a month, and had undergone drug rehabilitation as well. She said that her depression caused her to neglect her self-care on occasion and that her anxiety caused her to experience panic attacks two or three times per month and to have difficulty concentrating even on simple tasks. Additionally, she suffered from mood swings and had been self-isolating since she stopped using street drugs. Her mental difficulties resulted in her missing work or being late due to insomnia or depression as well as other behaviors that affected her work.

The vocational expert, Ms. Blythe, described the requirements of Plaintiff's past jobs, all of which were light or sedentary in exertional level. She was then asked questions about a person who could work at all exertional levels but who had a variety of mental limitations. She testified that someone so limited could not do any of Plaintiff's past jobs, but that such a person who also had Plaintiff's vocational profile could work as a housekeeper cleaner, a page, or a hand packager. If the person could not work at a

production pace, he or she could not be a hand packager, but could be a coffee maker. Someone who would be off task more than 10% of the time or who would miss two days of work per month could not do any of those jobs, however.

### B.  Medical Evidence

The extensive records documenting Plaintiff's treatment for mental health issues are accurately summarized in Plaintiff's memorandum, *see* Doc. 9-1 at 5-14.  Briefly, those records show that Plaintiff was treated for anxiety and depression as well as for substance abuse including alcohol and marijuana.  Other diagnoses included bipolar disorder and personality disorder.  Her symptoms included manic episodes, irritability, suicidal thoughts, and involvement in high-risk activities as well as auditory hallucinations.  She was taking various medications for her impairments, including antipsychotic medications.  Plaintiff's concentration was typically described as fair, and she also reported significant depression and fatigue.  Her symptoms intensified in 2020 once she became sober.  During the entire period of time, she attended counseling and psychiatric appointments on a regular basis.

### C.  Opinion Evidence

There are multiple opinions in the record concerning Plaintiff's mental impairments.  Two state agency reviewers, Drs. Butler and Fassler, reviewed the records.  Dr. Butler did not think Plaintiff had any severe mental impairments, while Dr. Fassler thought that she had a mild limitation in relating to others and a moderate limitation in concentration and adaptation.

Plaintiff saw Dr. Santarpia for a consultative examination on November 26, 2019.  Plaintiff told Dr. Santarpia that she had been diagnosed with bipolar I disorder, anxiety, and borderline personality disorder and had been hospitalized five times since 2015.  She said she had trouble sleeping and experienced mood swings, engaged in risky behavior, and had short-term memory deficits.  At that time, she was consuming alcohol every other day.  The examination showed that her thoughts were coherent and goal-directed and her affect was appropriate.  Her mood was euthymic.  Dr. Santarpia concluded that Plaintiff's memory and concentration were intact and her insight and judgment were fair.  Dr. Santarpia thought Plaintiff to be capable of understand and applying both simple and complex directions and instructions, of making work-related decisions, of relating adequately to others, and sustaining concentration as well as an ordinary work routine. (Tr. 854-57).

Plaintiff's counselor, Emma Montague, completed a mental impairment questionnaire on October 15, 2020.  She had been seeing Plaintiff since November of the prior year either weekly or twice weekly and listed Plaintiff's diagnoses as severe cocaine, alcohol, and cannabis use disorder, borderline personality disorder, generalized anxiety disorder and binge-eating disorder.  Her clinical findings included slow speech,

depressed mood and affect, sleep difficulties, limited insight, and occasional thoughts of suicide. Ms. Montague concluded that Plaintiff was unable to meet competitive standard or had no useful ability to function in fifteen different areas, including maintaining attention for even two-hour segments, completing a normal workday and work week without interruption from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number of rest periods. She noted that Plaintiff's mood shifted rapidly and featured many extremes lasting several days and limiting her functioning. Finally, she concluded that Plaintiff would be off task for 25% or more of the workday and would miss more than four days of work per month. (Tr. 1541-46).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV.  DISCUSSION

As noted, Plaintiff takes issue with the ALJ's evaluation of Ms. Montague's opinion which, if accepted, contained restrictions clearly inconsistent with the performance of substantial gainful activity. She notes that, by regulation, the most important considerations in weighing opinion evidence are supportability and consistency, and argues that the ALJ either did not

discuss these factors or did so only in conclusory fashion. In response, the Commissioner argues that the ALJ properly based his residual functional capacity findings on the record evidence and the various expert medical opinions, and that he used the proper criteria in his evaluation of Ms. Montague's report.

Here is how the ALJ reached his decision. First, the ALJ concluded that the evidence did not fully support Plaintiff's self-report of disabling symptoms - a conclusion that Plaintiff does not dispute. He pointed out that her activities of daily living "require significant physical and mental demands, which are not consistent with the level of limitation the claimant alleges." (Tr. 21). He also relied in part on her work activity, concluding that it showed that, at least at times, Plaintiff had greater functional capacity than she testified to. (Tr. 22).

Turning to the medical evidence, after summarizing the treatment records, the ALJ engaged in a lengthy analysis of the various opinions, *see* Tr. 23-25. First, he found state agency reviewer Dr. Butler's opinion of no severe mental impairment not to be very persuasive because evidence which post-dated his opinion showed that Plaintiff had at least moderate limitations in functioning. Next, he found Dr. Fassler's opinion to be somewhat persuasive based on the fact that it was more consistent with the evidence, including the opinion of Dr. Santarpia and Plaintiff's activities of daily living. He also deemed Dr. Santarpia's opinion to be somewhat persuasive, although he believed that "the totality of the evidence supports greater limitations in social functioning, concentration and adaptation than opined due to impairment-related symptoms." He thus credited her conclusion that Plaintiff could do unskilled simple work, but he found that Plaintiff also had moderate limitations in the areas of interacting with others, concentrating, and managing herself.

Lastly, the ALJ discussed Ms. Montague's statement. He characterized it as "not persuasive," noting that although Ms. Montague had a longitudinal treating relationship with Plaintiff, her own findings reflected "grossly normal metal status" and her conclusion that Plaintiff was unable to engage in any work activity was inconsistent with Plaintiff's activities of daily living including short-term employment. He concluded by stating that "the totality of the evidence does not support the limitations to the degree alleged by the claimant," citing the grossly normal psychiatric findings, the effective nature of conservative treatment, and Plaintiff's engagement in a wide range of daily activities. (Tr. 25).

This Court has explained how the regulations for evaluating expert medical opinions function after they were revised in March of 2017:

> First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own]

medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. Id. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

*Michael H. v. Comm'r of Soc. Sec.*, 2022 WL 768658, at *5 (W.D.N.Y. Mar. 14, 2022).

Here, the ALJ did consider how the evidence both supported and was consistent (or inconsistent) with Ms. Montague's opinion. That is apparent from his citation to her own treatment notes - the supportability question - and to other evidence of record, including all of the other opinions concerning Plaintiff's mental functioning and to her activities of daily living. There is therefore no support for Plaintiff's argument that the ALJ failed to consider these two factors. The only questions that remain, therefore, are whether the ALJ's discussion of those factors as the relate to Ms. Montague's opinion is too conclusory to be sustained and whether substantial evidence supports his evaluation of that opinion.

As to the first issue, in *Sarah M.K. v. Comm'r of Social Security*, 2022 WL 4232880 (W.D.N.Y. Sept. 14, 2022), this Court stated, at *5, that

[u]nder the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. *Loucks [v. Kijakazi]*, 2022 WL 2189293 [(2d Cir. June 17, 2022)] at *2. However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.' " *Loucks*, 2022 WL 2189293 at *2 (*quoting Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

In this case, the ALJ's discussion of these factors, at least in the section of the decision in

-6-

which Ms. Montague's opinion is specifically addressed, is admittedly sparse.  However, even if the Court were to assume, without deciding, that it was too conclusory to satisfy the applicable regulation, there is no question that the ALJ took these factors into account when evaluating both Plaintiff's testimony and the other three opinions concerning her mental functioning.  The ALJ also summarized Ms. Montague's findings, noting that Plaintiff, during counseling sessions, typically appeared to be alert, had normal cognitive functioning, did not show psychomotor agitation, had normal speech with linear thought processes, and had normal ability to concentrate, pay attention, and remember both recently and remotely.  *See* Tr. 22.  The Court therefore concludes that the ALJ adhered to the substance of the regulation, rendering any procedural error (if there was one) harmless on this record.

The other issue is whether substantial evidence supports the ALJ's decision.  Although Plaintiff argues that there is substantial support in the record for Ms. Montague's conclusions, that is not the issue - it is whether the conflicting evidence is weighty enough to have permitted a reasonable person to conclude, as the ALJ did, that Plaintiff's mental functional limitations were not so severe as to prevent her from working. As more fully discussed above, various portions of the record, including the other medical opinions, normal findings on examination, and activities of daily living, all support the ALJ's ultimate determination.  For this reason and for the other reasons cited above, the Court finds no basis for remanding this action, and it will affirm the Commissioner's decision.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9), **GRANTS** the Commissioner's motion (Doc. 11), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

/s/ **Terence P. Kemp**
**United States Magistrate Judge**